IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: : <br> NORTEL NETWORKS CORP., *et al.*, <br> <br> Foreign Applicants in Foreign Proceedings | : <br> : <br> : <br> : <br> : | Chapter 15 <br> Case No. 09-10164-KG <br> (Jointly Administered) |
| KIEN CHEN and MOREN MINTO, <br> <br> Appellants/Applicants, <br> <br> v. <br> <br> ERNST & YOUNG INC., <br> <br> Appellee. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | C.A. No. 10-314-LPS |

## MEMORANDUM ORDER

At Wilmington this **15th** day of **November, 2013**, this matter coming before the Court upon the appeal (the "Appeal") (D.I. 1) of Kien Chen and Moreno Minto ("Appellants" or "Lead Plaintiffs"), from an order entered on March 2, 2010 by the Honorable Kevin Gross of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the Chapter 15 proceedings of the Canadian Nortel Group[1] (the "Chapter 15 Cases"), denying Lead Plaintiffs' Motion (the "Motion") (Bankr. Case No. 09-10164-KG, D.I. 230) for Limited Modification of Stay (A) to Allow Service of a Document Preservation Subpoena and (B) to Pursue the Securities Litigation under 11 U.S.C. § 1522(c) (the "Order") (Bankr. D.I. 265), and having considered the parties' papers submitted in connection therewith;

---

[1] The Canadian Nortel Group is comprised of Nortel Networks Corporation ("NNC") and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation. (*See* D.I. 15 at 1)

1

IT IS ORDERED that the Appeal is **DENIED** and the March 2, 2010 Order of the Bankruptcy Court is **AFFIRMED**, for the reasons that follow:

Background.[2] On January 14, 2009, the Canadian Nortel Group commenced certain proceedings (the "Canadian Proceedings") under Canada's Companies' Creditors Arrangement Act ("CCAA"), R.S.C. 1985, c. C-36, as amended, before the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court"). (*See* D.I. 12 at 5; D.I. 15 at 1, 3) Also on that date, Ernst & Young Inc. ("Monitor" or "Appellee"), the court-appointed monitor and authorized foreign representative of the Canadian Nortel Group in the Canadian Proceedings, filed a petition in the Delaware Bankruptcy Court seeking recognition of, and related relief in respect of, the Canadian Proceedings under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code"). (*See* D.I. 3 at 1; D.I. 15 at 1, 3) On February 27, 2009, the Bankruptcy Court entered an order (the "Recognition Order"): (i) recognizing the Canadian Proceedings as foreign main proceedings pursuant to 11 U.S.C. § 1517; (ii) recognizing the Appellee as the authorized foreign representative of the Canadian Nortel Group; and (iii) giving full force and effect – pursuant to 11 U.S.C. § 1521 – in the United States to the First Amended and Restated Initial Order of the Ontario Court (as well as any further amendments or extensions thereof as may be granted by the Ontario Court) (the "Initial Order"). (*See* D.I. 12 at 5; D.I. 15 at 3-4) The Initial Order stays all proceedings against the Appellee, the Canadian Nortel Group, and any current, former, or future

---

[2]More than 3 ½ years have passed since the entry of the Bankruptcy Court Order that is the subject of this Appeal; the appellate briefing was completed nearly three years ago. The parties have not provided the Court with any supplemental briefing (other than in relation to a motion to strike an errata, which the Court denied in May 2011 (D.I. 24)), status report, or notice of subsequent developments. Hence, the Court will decide the issues presented in this Appeal solely on the basis of the briefing and record the parties created several years ago.

2

officers and directors of the Canadian Nortel Group (the "Stay"). (*See* D.I. 12 at 5; D.I. 15 at 4) The Stay has been extended a number of times. (*See, e.g.*, D.I. 12 at 5; D.I. 15 at 4) Additionally, as noted by Appellee, many affiliates of the Canadian Nortel Group are currently[3] the subject of various plenary and ancillary insolvency proceedings in multiple jurisdictions world-wide. (*See* D.I. 15 at 4)

Appellants are the appointed lead plaintiffs in the securities class action entitled "*David Lucescu, Individually and On Behalf of All Others Similarly Situated v. Mike Zafirovski, et al.*," Civil Action No. 09-cv-04691-SAS (the "Securities Litigation"), commenced in the United States District Court for the Southern District of New York in May, 2009, on behalf of all persons (the "Putative Class") who purchased or otherwise acquired securities of NNC between May 2, 2008 and September 17, 2008, inclusive (the "Class Period"). (*See* D.I. 12 at 1; *see also* D.I. 15 at 4-5) In relation to the Securities Litigation, Appellants filed their Motion in the bankruptcy proceeding, seeking to modify the Stay to the limited extent of (a) permitting the Securities Litigation to proceed against two individuals, former officers of NNC, who are not themselves debtors, and (b) serving a subpoena directed at preserving documents that would be responsive to discovery requests in the Securities Litigation. (*See id.* at 3) After full briefing, on February 26, 2010, the Bankruptcy Court heard argument on the Motion, and at the conclusion of the hearing explained why it was denying the Motion. (*See* D.I. 12 at 6; D.I. 13 Ex. 19 (Tr. Feb. 26, 2010 Hr'g) ("Tr."); D.I. 15 at 2) Thereafter, on March 12, 2010 Appellants filed a Notice of Appeal of the Order with the Bankruptcy Court (the "Notice of Appeal") (Bankr. D.I. 233; *see also* D.I. 12 at 1, 6; D.I. 13 Ex. 8; D.I. 15 at 2, 6), which was entered on the docket of this Court

---

[3]*See* footnote 2.

on April 21, 2010 (*see* D.I. 4).

Contentions. In their Appeal of the Order, Lead Plaintiffs assert that the Bankruptcy Court erred in denying their motion to modify the Recognition Order, pursuant to 11 U.S.C. § 1522(c),[4] to allow Appellants to: (i) serve a document preservation subpoena, and (ii) pursue the Securities Litigation – alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder – against the non-debtor Defendants, Mike Zafirovski and Pavi Binning ("D&O Defendants"). (*See* D.I. 2 at 2; D.I. 12 at 3 n.2, 5)

First, with respect to the Recognition Order, entered pursuant to 11 U.S.C. §§ 1520 and 1521(a) in the Chapter 15 Cases and imposing a stay of the Securities Litigation – including against the D&O Defendants – Appellants assert that proceeding against the D&O Defendants "would involve, at least in the foreseeable future, only the filing of motions to dismiss by the [D&O Defendants] requiring no perceptible action by the [D&O Defendants] or [NNC], as such motions are entirely lawyer driven." (D.I. 12 at 3) Appellants further contend that, because the D&O Defendants are non-debtors, they enjoy no Bankruptcy Code protections absent compelling circumstances. (*See id.*) They add:

> The stay imposed by . . . the Initial Order is clearly contrary to [U.S.] public policy . . . . Where the CCAA provides for a stay of any proceeding against current or former officers or directors of an applicant under the CCAA, the Bankruptcy Code affords no such extraordinary relief to non-debtors, including officers and directors of a debtor. . . . [T]he automatic bankruptcy stay does not extend to non-debtors and such relief is not available to non-debtor

---

[4]"The court may, at the request of the foreign representative or an entity affected by relief granted under section 1519 or 1521, or at its own motion, modify or terminate such relief." 11 U.S.C. § 1522(c).

> defendants absent a showing of extraordinary circumstances. Moreover, there is a significant public policy and interest in the enforcement of the federal securities laws . . . . No such proof [of extraordinary circumstances] was or has been provided by the Monitor.

(D.I. 12 at 10-11)

Second, with respect to the document preservation subpoena, Appellants submit that while "the discovery stay under the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(b)(3)(B)) (the 'PSLRA Stay') prohibits Appellants from serving discovery on, *inter alia*, the [D&O Defendants] and [NNC]," the "basic tenets of the PSLRA and the interests of justice are best served by ensuring that the relevant documents in [NNC]'s possession and/or control are maintained until after Appellants are permitted to obtain discovery, *i.e.*, after motions to dismiss are decided." (*Id.* at 3) Lead Plaintiffs sought service of a document preservation subpoena upon NNC to avert loss, destruction, or unavailability of potentially relevant documents until the time when Lead Plaintiffs could seek discovery subsequent to the lifting of the PSLRA Stay in the Securities Litigation. (*See id.*) Appellants state that "[n]o action would be required on the part of [NNC] other than to maintain documents and information as defined in the Motion;" as a result, "[n]o interference with any reorganization (or more accurately liquidation) in Canada or the United States would occur." (*Id.* at 3-4; *see also* D.I. 16 at 3-5; D.I. 18 at 1)

Appellants further urge that, absent reversal, they will suffer severe prejudice due to their inability to pursue legitimate claims against non-debtors who hold no entitlement to any protections of the Bankruptcy Code, as well as the potential loss and/or destruction of relevant documents (particularly given the fact that NNC and affiliated Canadian and U.S. debtors "are liquidating all of their assets through a series of sales of assets and business divisions"). (*See*

D.I. 12 at 4, 6; D.I. 16 at 5-6) Appellants contend that the Bankruptcy Court's reliance on its role as a court of ancillary jurisdiction was stretched, and that "the interests of comity do not go so far as to continue to support relief that is wholly unjustified under the Bankruptcy Code and relevant precedent regarding litigation in the United States between non-debtors." (D.I. 12 at 4) Noting that the Ontario Court's Initial Order does not stay U.S. proceedings, Appellants submit that the Bankruptcy Court was the proper court in which to bring its Motion. (*See* D.I. 16 at 6-8) Appellants also argue that the Recognition Order – the operative order establishing the Stay, which impacts the Securities Litigation and which is the proposed subject of modification – was entered by the Bankruptcy Court, meaning the Ontario Court has no jurisdiction or authority to modify it. (*See id.*)

Appellee's response focuses primarily on the reasons the Bankruptcy Court did not clearly err in finding that Appellants should have sought relief first from the Ontario Court. (*See* D.I. 15 at 2-3; *see also* D.I. 3) These reasons include that the Stay was created pursuant to the Initial Order of the Ontario Court and enforced in the United States through the Bankruptcy Court's Recognition Order. (D.I. 15 at 2, 15-16) Appellee further argues that there was no error in finding that the relief sought would have a "significant" impact on the Canadian Nortel Group, placing a burden on Appellants under 11 U.S.C. § 1522(a) that they did not meet. (*See id.* at 2, 9-14) Appellee also contends that the Bankruptcy Court correctly determined that allowing service of a document production subpoena on Nortel would prejudice the estate and its creditors. (*See generally* D.I. 15)

Standard of review. Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a), district courts have mandatory jurisdiction to hear appeals

"from final judgments, orders, and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1) and (3). In conducting its review of the issues on appeal, the Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

Analysis. The Court concludes that the Bankruptcy Court did not err with respect to its findings of fact and its legal determinations. Emphasizing that "this is a Chapter 15 case as opposed to a Chapter 11 case," the Bankruptcy Court properly relied heavily on principles of comity, concluding correctly that the request for relief sought by Appellants "could have and should have been brought before the Canadian court in the first instance, the court which is the main proceeding here." (Tr. at 37)

Additionally, as the Bankruptcy Court stated in the Order, the requested modifications to the Stay were unwarranted due to "the prejudice to the Debtors who are in the midst of a complex case." (D.I. 1 Ex. A; *see also* D.I. 15 at 11-12) ("Nortel continues to be confronted with a plethora of complex issues that will test the efforts of its increasingly strained personnel to administer the restructurings and to maximize the value available to all stakeholders. . . . Nortel's business functions are now being performed with minimal or skeletal staffing levels, as

there have been significant layoffs and employee transfers over the course of the Canadian Proceedings and the Chapter 11 Cases.")

Appellants' citation to 11 U.S.C. § 1522(a) does not alter the outcome. Section 1522(a) provides: "The court may grant relief under section 1519 or 1521, or *may* modify or terminate relief under subsection (c), *only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.*" 11 U.S.C. § 1522(a) (emphasis added). *See also, e.g., In re Qimonda AG Bank. Litig.*, 433 B.R. 547, 557 (E.D. Va. 2010) ("[A] bankruptcy court, when modifying or terminating relief pursuant to § 1522(c), must ensure that 'the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.'"). Here, Judge Gross examined the circumstances, drawn from the parties' presentations as well as his own familiarity with the cases, and concluded that the relief sought was not warranted, given "a balanc[e] of the hardships [which] . . . clearly rests in favor of the debtors." (Tr. at 37-38) As Appellee states, "[b]y denying the Motion, the Bankruptcy Court correctly determined that maintenance of the Stay benefited all parties with a stake in the restructuring of the Canadian Nortel Group." (D.I. 15 at 10) Even assuming that the requested modifications could have been accomplished while still sufficiently protecting the interests of all "other interested entities," the Bankruptcy Court was within its discretion not to make such modifications.

With respect to the requested document preservation subpoena, which sought "to preserve documents of the Canadian entity, not even an entity here in the United States," the Court finds no error in the Bankruptcy Court's determination that "[t]here's no question that does not belong here." (*See* Tr. at 37) Nor does the Court find error in the Bankruptcy Court's conclusion that "a balancing of the hardships here clearly rests in favor of the debtors." (*Id.* at 38) As Appellee

8

explains, "the Document Preservation Subpoena on its face requires NNC to assume the constant burden of identifying whether any information is responsive to the specific categories described therein." (D.I. 15 at 25)

Conclusion. For the reasons explained, the Bankruptcy Court's decision is **AFFIRMED**. The Clerk of Court is directed to **CLOSE** this case.

Wilmington, Delaware                                 UNITED STATES DISTRICT JUDGE